# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 22-3068**

**September Term, 2023**

FILED ON: JUNE 14, 2024

UNITED STATES OF AMERICA,
> APPELLEE

v.

SALUSTHIAN LUTAMILA, ALSO KNOWN AS SALLU LUTAMILA, ALSO KNOWN AS LUTAMILA SALLU WAISO,
> APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cr-00024-1)

---

Before: SRINIVASAN, *Chief Judge*, WILKINS and CHILDS, *Circuit Judges*.

## J U D G M E N T

We considered this appeal on the record from the United States District Court for the District of Columbia and on the briefs and oral arguments of the parties. The Court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is hereby:

**ORDERED AND ADJUDGED** that the district court's judgment be **AFFIRMED.**

Before us is Lutamila's challenge to the judgment imposed following his September 16, 2022 sentencing hearing before the district court. Lutamila alleges that the district court erred in determining the loss amount under U.S.S.G. § 2B1.1(b)(1) related to his convictions for bank fraud, theft by credit-union employee, wire fraud, and money laundering. These convictions originated from Lutamila's time as the Director of Finance and acting Chief Financial Officer at the Inter-American Development Bank – IIC Federal Credit Union ("IDB – IIC"), a small credit union in Washington, D.C. S.A. 5. There, Lutamila made unauthorized transfers of money from internal credit union accounts to his personal E\*Trade account in sum totaling $610,000. S.A. 6,

1

8.  IDB – IIC ultimately recouped all but $76,069 of the funds stolen by Lutamila.  A. 144; S.A. 9, 21.

The presentence investigation report ("PSR") explained that under § 2B1.1, Lutamila's offense level should be increased by 14 points because the "loss" amount was $610,000.  S.A. 6, 10.  Based on that and the other enhancements, the PSR set forth a total offense level of 24, which resulted in a guideline range of 51-63 months.  The government agreed that Lutamila's applicable guideline range was 51-63 months.  S.L.D.A 10-11, 18.  Lutamila also acknowledged this guideline range in his Sentencing Memorandum.  However, he argued that the current version of the guidelines are "flawed," so the court should rely on the "loss" table in the 1987 version of § 2B1.1.  A. 78; *see id.* at 77–80.  In urging the court to adopt that approach, however, Lutamila still used $610,000 as the applicable "loss" amount.  *See* A. 79.  Later at the sentencing hearing, he explained how he arrived at that calculation.  He asserted that "what should be measured here is the actual loss.  And that's the $76,069, where that comes out where the base offense level would be 7 plus the 6.  That's how we got to 13.  That's where the guideline range was 12 to 18 months." A. 134.  After the defense presentation, the district court began its sentencing ruling by stating, "[s]o everyone agrees here the guidelines are 51 to 63 months." A. 142.  Lutamila's counsel did not object to that statement directly or contemporaneously when it was made.  *Id.*

The district court sentenced Lutamila to 44 months of imprisonment, a below-guidelines sentence based on the § 3553(a) factors.[1]  A. 144.  Near the conclusion of the proceeding, the district court asked "Anything else?  Any other objections to the sentence imposed not already on the record?  Ms. Akpan?" A. 148.  Ms. Akpan, Lutamila's counsel, replied: "Your Honor, not other than what I've already enlisted on the record." *Id.*  Again, Lutamila's counsel did not explicitly object to the applicable guideline range.

On appeal, Lutamila contends that the district court erred by calculating "loss" to equal the total amount that Lutamila stole, including the amount that was recovered and returned to the victim credit union.  Appellant. Br. 4.  He asserts that the district court's calculation was in "error because the term 'loss' unambiguously means the funds that the victims actually lost (i.e., never recovered), not funds that Mr. Lutamila attempted or intended to steal." Appellant Br. 4.

Despite numerous opportunities to do so in his sentencing memorandum and during the sentencing hearing, Lutamila failed to properly preserve the argument that it was inappropriate for the court to measure "loss" to include funds that were stolen but later recouped by the victim.  Instead, Lutamila agreed to the proposed PSR guideline range based on a "loss" calculation of

---

[1] "Under Section 3553(a), sentencing courts must weigh a number of considerations, including (i) 'the nature and circumstances of the offense and the history and characteristics of the defendant;' (ii) 'the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[,] (B) to afford adequate deterrence to criminal conduct[,] (C) to protect the public from further crimes of the defendant[,] and (D) to provide the defendant with needed [rehabilitation]'; and (iii) 'the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct[.]' 18 U.S.C. § 3553(a)." *United States v. Khatallah*, 41 F.4th 608, 644 (D.C. Cir. 2022), *cert. denied*, 143 S. Ct. 2667 (2023).

$610,000 and framed his argument in the sentencing memorandum and later at the sentencing hearing as a request for a variance based on the § 3553(a) factors. A. 76; 134. In his sentencing memorandum, under "Defense Request for A Downward Departure or Variance," Lutamila submitted:

> As set forth in the PSR, the applicable Sentencing Guideline range is 51-63 months based on 0 criminal history points and an offense level of 24.

A. 76. And his argument in the sentencing hearing remained a variance argument. During the hearing, Lutamila's lawyer explained how she arrived at a calculation of 12 months and one day based on the supposed "arbitrariness of the guidelines," a reference to the sentencing memorandum's argument for varying downward from the 51-63 month range. *Id.* at 134–35, 137.

Because Lutamila failed to make sufficient "specific and detailed objections" regarding "loss," this Court's review is for plain error. *United States v. Pyles*, 862 F.3d 82, 84 (D.C. Cir. 2017). "For an error to be 'plain,' it must be 'clear' or 'obvious.'" *United States v. Meadows*, 867 F.3d 1305, 1317 (D.C. Cir. 2017) (citation omitted).

Lutamila has not shown and cannot show that "loss" in § 2B1.1 unambiguously means the "net" loss to the victim after a reduction for any funds recouped by the time of sentencing. That is because "loss" can at least reasonably be read to mean the total amount stolen, including any amount later recovered by the victim. The guidelines do not define "loss," and dictionaries do not point decisively to one meaning on this question. For example, Lutamila cites *Black's Law Dictionary*, but in the same entry he offers, one definition ("the disappearance or diminution of value") could be seen to suggest that "loss" means only the net amount the victim has permanently lost, while another definition ("[t]he failure to maintain possession of a thing") suggests "loss" means the whole amount that at one time transferred possession as a result of the offense without regard to later recovery. Appellant Br. 9 (quoting *Loss, Black's Law Dictionary* (11th ed. 2019)). Moreover, the "loss" table in § 2B1.1 appears under the heading "Specific Offense Characteristics," U.S.S.G. § 2B1.1(b), indicating that loss is defined not vis-à-vis the victim's end state sometime after completion of the offense but rather as the amount taken as a result of and at the time of the offense.

Nor do any guidelines beyond § 2B1.1 demonstrate that "loss" means only net loss after accounting for any ultimate recoupment. For example, to determine the "loss" attributable to a defendant under § 2B1.1, a court must first determine the "relevant conduct." U.S.S.G. § 1B1.3(a); *United States v. Smith*, 79 F.4th 790, 794–95 (6th Cir. 2023). "Relevant conduct," in turn, includes "all acts . . . willfully caused by the defendant" as well as "all harm that *resulted* from [those] acts . . . and all harm that was the *object* of such acts." U.S.S.G. § 1B1.3(a)(1), (3) (emphasis added). "In the context of fraud," theft, or embezzlement, "that harm is 'loss.'" *Smith*, 79 F.4th at 798. The fact that "loss" is the "harm that *resulted*" tells us nothing about whether the term means only the victim's net loss. And the fact that "loss" is also the "harm that was the *object* of" the theft implies "loss" is the total amount stolen, to include later-recovered funds.

3

Finally, Lutamila does not point to any controlling precedent that supports his reading of § 2B1.1. For these reasons, the district court did not make any "obvious" or "clear" error, *Meadows*, 867 F.3d at 1317, when calculating "loss" to include funds that the credit union lost due to Lutamila's theft but later recovered.

\* \* \*

For the foregoing reasons, we affirm the judgment of the district court. Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: /s/

Daniel J. Reidy
Deputy Clerk